**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DONALD D'AMICO, ) | |
| ) | 3:11-cv-00860-RCJ-VPC |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| ROBERT B. BANNISTER, *et al.*, ) | |
| ) | |
| Defendants. ) | January 29, 2013 |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#16).[1] Plaintiff did not oppose defendants' motion despite receiving an extension of time to do so. The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#16) be granted.

### I.  HISTORY & PROCEDURAL BACKGROUND

Plaintiff Donald D'Amico ("plaintiff"), a *pro se* inmate, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#7). On November 29, 2011, plaintiff filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, alleging defendants Sandy Snider, John Peery, Robert Bannister and Shannon Moyle were deliberately indifferent to plaintiff's serious medical needs, in violation of the Eighth

---

[1] Refers to the court's docket numbers.

-1-

Amendment (#7, pp. 7-10). The court screened the complaint, pursuant to 28 U.S.C. § 1915A, and permitted plaintiff's Eighth Amendment claim to proceed against all defendants (#6, p. 6).

Plaintiff alleges the following: in January 2011, he suffered a stroke (#7, p. 3). NNCC correctional officers alerted medical personnel and plaintiff was transported to Carson-Tahoe Hospital. *Id.* Doctors at Carson-Tahoe Hospital prescribed physical therapy. *Id.* After plaintiff returned to NNCC, he spent a week in the infirmary, where Dr. Gedney informed him that NNCC does not provide physical therapy because it's not in the budget. *Id.* at 4. Thereafter, plaintiff returned to the main yard without a physical therapy referral. *Id.* Plaintiff was given a wheelchair and "left to fend for himself." *Id.* Plaintiff suffers prolonged memory loss, neurological damage, speech problems, arm spasms, unsteady walking and loss of balance, numbness in his legs and hands, and difficulty swallowing, which sometimes causes him to choke on food. *Id.* Plaintiff asserts that each defendant personally denied plaintiff's requests for physical therapy, which constituted deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment. *Id.*

Defendants allege the following: on January 12, 2011, plaintiff suffered a stroke and was sent to Carson-Tahoe Hospital for evaluation and treatment (#17, Ex. C, pp. 135, 144-45 (*sealed*)). The hospital discharge papers recommended that plaintiff continue physical, occupational, and speech therapy. *Id.* at 145. On January 14, 2011, plaintiff returned to NNCC and medical staff admitted him into the infirmary. *Id.* at 135. On January 15, 2011, NNCC medical staff noted that plaintiff was "proactive in his 'physical therapy' of sitting up, standing up, and doing hand exercise." *Id.* at 135.

Rehabilitation for an inmate that has suffered from a stroke is performed in NNCC's infirmary, with the goal to rehabilitate the inmate to the point where he can be discharged from the

infirmary and care for himself (#16-1, Ex. E, ¶ 5).  The first step involves passive range of motion movement in which a nurse will physically move the inmate's weak side.  *Id.*  For example, if an inmate stroke victim has a weak arm, the nurse will repeatedly move the arm over a period of time to help the inmate regain strength and mobility.  *Id.*  Medical staff will work with the inmate on daily living activities, such as grooming, using the toilet, eating, and other fine motor skills.  *Id.*  The next step is to have the inmate use his strong side to exercise his weak side.  *Id.* at ¶ 6.  For example, nurses will instruct the inmate to use his strong arm to move his weak arm, and over a period of time the inmate will regain strength and mobility in the weak arm.  *Id.*  For movement around the infirmary, two members of NNCC's medical staff will position themselves on either side of the inmate to ensure he does not fall.  *Id.* at ¶ 7.  When the inmate begins to improve, only one member of the medical staff will help with the transfer, typically on the inmate's weak side.  *Id.*  With continued improvement, NNCC medical staff will encourage the inmate to perform self-transfers, and the inmate will be provided a wheelchair or walker as needed.  *Id.* at ¶ 8.  The inmate can also use the parallel bars to practice walking.  *Id.* at ¶ 9.

Dr. Karen Gedney, Senior Physician at NNCC, conducts an independent evaluation of every inmate returning from an outside medical facility (#16-1, Ex. F, ¶ 4).  If an outside medical facility recommends a certain type of therapy, Dr. Gedney will examine the inmate and determine if that therapy is appropriate for the inmate.  *Id.*  On January 18, 2011, Dr. Gedney evaluated plaintiff and found that he had a weak right side and mild speech problems.  *Id.* at ¶ 5.  Plaintiff told Dr. Gedney that he wished to leave the infirmary as soon as possible.  *Id.*  Dr. Gedney observed that plaintiff was doing very well for someone who had recently suffered a stroke, and discharged him from the infirmary.  *Id.*  The next day, Dr. Gedney again examined plaintiff and noted that his condition was improving and that he was exercising in his room.  *Id.* at ¶ 6.  Dr. Gedney encouraged plaintiff to

continue exercising to improve his physical strength and to speak often to improve his speech. *Id.* at ¶ 7. Plaintiff received a cane to help him walk and a wheelchair for comfort. *Id.* at ¶ 8.

On March 3, 2011, Dr. Gedney conducted plaintiff's follow-up examination. She noted that plaintiff's condition had improved significantly—his speech had improved and he had re-gained strength in his right side, although he still walked with a limp. *Id.* at ¶ 9. Dr. Gedney advised plaintiff to continue exercising. *Id.* Dr. Gedney states that she provided plaintiff with the necessary treatment following his stroke and that his significant improvement between January 2011 and March 2011 shows that her care was appropriate under the circumstances. *Id.* at ¶ 10.

On February 24, 2011, plaintiff submitted an informal grievance, which stated that he had not received any physical therapy since he was housed in NNCC's infirmary (#16-1, Ex. A, p. 10). Plaintiff requested that medical staff refer him to a physical therapy specialist to rehabilitate his remaining stroke symptoms. *Id.* Defendant Sandra Snider, a Director of Nursing Services I, responded at the informal level and told plaintiff that rehabilitation is conducted by NNCC nurses with extensive rehab experience. *Id.* at 8. Defendant Snider informed plaintiff that if he needed to be re-admitted to the infirmary for post-stroke care, he could go to sick call and ask for re-evaluation. *Id.* Defendant Snider states that she believes the rehabilitation options available in NNCC's infirmary are appropriate for a stroke victim. *Id.*

Plaintiff did not request re-evaluation, but instead filed a first level grievance, which stated that he disagreed with defendant Snider's response and that NNCC's infirmary is required to provide a physical therapist for plaintiff's condition (#16-1, Ex. A, p. 7). Defendant John Peery, a Director of Nursing Services II, responded to the first level grievance and informed plaintiff that NNCC is not required to have physical or occupational therapists. *Id.* at 6. Defendant Peery also told plaintiff that he could be evaluated by NNCC medical staff for further treatment. *Id.*

-4-

Defendant Peery states that when an inmate returns from an outside medical facility, NNCC physicians will review the recommendations and treatment provided by the outside medical facility, but will make an independent evaluation of the inmate's condition (#16-1, Ex. H, ¶ 4). If an outside medical facility makes specific therapy recommendations, NNCC medical staff will often work with the inmate on those specific instructions. *Id.* at ¶ 5. However, many times the outside medical facility will simply include general therapy recommendations, as was done in this case. *Id.* at ¶¶ 6-7. With general recommendations, NNCC's infirmary staff rely on treatment instructions from their own examining doctors. *Id.* at ¶ 6. Defendant Peery believes NNCC nurses and medical staff have the ability, experience and training to work with inmates on physical rehabilitation following a stroke, and that plaintiff could have sent an inmate request to medical staff is he needed additional rehabilitation. *Id.* at ¶¶ 8-9.

Instead of submitting an inmate request to medical staff, plaintiff filed a second level grievance (#16-1, Ex. A, pp. 4-5). Defendant Dr. Robert Bannister, NDOC's Medical Director, responded to the second level grievance, and informed plaintiff that he should send a medical kite to a practitioner if he has medical concerns. *Id.* at 1. Defendant Bannister states that if plaintiff had requested re-evaluation from NNCC medical staff, he would have received appropriate treatment. *Id.* at ¶ 8.

Since plaintiff's stroke, NNCC physicians have examined plaintiff multiple times. Defendants assert that plaintiff's medical records do not contain any concerns that he was not sufficiently recovering from his stroke (#17, Ex. C, pp. 131-33, 138-40 (*sealed*); #16-1, Ex. D).

Defendants move for summary judgment on the grounds that: (1) defendants did not act with deliberate indifference to plaintiff's serious medical needs (#16, pp. 9-12); (2) defendants are entitled to qualified immunity (#16, pp. 12-13); and (3) defendants cannot be sued in their official

capacities (#16, p. 13).  Defendants attach several documents to support their motion for summary judgment, including: (1) plaintiff's grievances related to his stroke (#16-1, Ex. A);[2] (2) plaintiff's inmate issue history (#16-1, Ex. B);[3] (3) plaintiff's NDOC medical records (#17 (*sealed*));[4] (4) the declaration of Karen L. Scofield (#16-1, Ex. D); (5) the declaration of Jonathan Perry (#16-1, Ex. E); (6) the declaration of Dr. Karen Gedney (#16-1, Ex. F); (7) the declaration of Sandra Snider (#16-1, Ex. G); (8) the declaration of John Peery (#16-1, Ex. H); (9) the declaration of Dr. R. Bruce Bannister (#16-1, Ex. I); and (10) the declaration of Shannon Moyle (#16-1, Ex. J).

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the court also notes that plaintiff has failed to oppose defendants' motion for summary judgment, despite being granted an extension of time to do so.  Local Rule 7-2(d) provides that the failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion.

## II.  DISCUSSION & ANALYSIS

**A.    Legal Standards**

**1.  42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert,* 526 U.S. 286, 290 (1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for

---

[2] Authenticated by the declaration of Monica Navarro (#16-1).
[3] Authenticated by the declaration of Monica Navarro (#16-1).
[4] Authenticated by the declaration of Ronnalee Knight (#16-1).

federal rights granted elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 2. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the

motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.    Analysis**

**1. Eighth Amendment Deliberate Indifference to a Serious Medical Need**

A prisoner's claim of inadequate medical care arises under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard—that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical needs. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Prison officials have wide discretion when determining the nature and extent of medical treatment to provide to inmates in their care. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Further, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to a serious medical need. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). However, a prisoner

may establish that such a difference of opinion amounted to deliberate indifference where "the course of treatment the doctors chose was medically unacceptable under the circumstances," and such a course of treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that defendants Snider, Peery, Bannister and Moyle each personally denied plaintiff's requests for physical therapy, which constituted deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment (#7, p. 4). Defendants assert that: (1) defendants were not deliberately indifferent to plaintiff's serious medical needs; (2) plaintiff's belief that he should have received treatment from a non-NDOC licensed physical therapist, rather than from NNCC medical staff, is merely a difference of opinion; (3) defendants Snider, Peery, and Bannister were not responsible for plaintiff's medical treatment; and (4) defendant Moyle is not a member of NNCC's medical team and has no authority to overrule medical decisions (#16, pp. 9-12).

Plaintiff's medical records reveal that on January 12, 2011, plaintiff suffered a stroke and was sent to Carson-Tahoe Hospital for treatment (#17, Ex. C, pp. 135, 144-45 (*sealed*)). Upon his return, plaintiff was admitted to NNCC's infirmary. On January 14, 2011, NNCC medical staff noted that plaintiff had a weak right side, slurred speech, and was unable to walk (#17, Ex. C, p. 135 (*sealed*); #16-1, Ex. D, p. 3). However, plaintiff was alert and said he was "getting better." *Id.* Over the next few days, NNCC nursing staff noted that plaintiff was proactive in his physical therapy and could walk using a walker (#17, Ex. C, pp. 135-36 (*sealed*); #16-1, Ex. D, pp. 3-4). On January 18, 2011, Dr. Gedney found that plaintiff's condition had improved and discharged him from the infirmary (#17, Ex. C, p. 134 (*sealed*); #16-1, Ex. D, p. 4). The next day, Dr. Gedney again

examined plaintiff and found that he was exercising in his room and regaining strength (#17, Ex. C, p. 133 (*sealed*); #16-1, Ex. D, p. 4).

On March 3, 2011, Dr. Gedney saw plaintiff for a follow-up assessment. She found that plaintiff's condition had improved significantly over the past two months—his speech had improved and he had re-gained strength on his right side (#17, Ex. C, p. 132 (*sealed*); #16-1, Ex. D, pp. 4-5). Dr. Gedney encouraged plaintiff to increase his exercise. *Id.*

Assuming *arguendo* that plaintiff's post-stroke condition constituted a serious medical need, the court finds that defendants did not exhibit deliberate indifference to plaintiff's rehabilitation. First, the record reflects that Dr. Gedney—who is not a defendant in this litigation—was plaintiff's treating physician after his stroke. There is no evidence that Dr. Gedney denied, delayed, or otherwise disregarded plaintiff's medical condition, or that she chose a medically unacceptable course of treatment "in conscious disregard of an excessive risk" to plaintiff's health. *See Jackson*, 90 F.3d at 332. Instead, Dr. Gedney evaluated plaintiff multiple times after his stroke and prescribed treatment that she deemed medically appropriate under the circumstances (#16-1, Ex. F, ¶ 10). *See Jones*, 781 F.2d at 771 (prison officials have wide discretion in determining the nature and extent of medical treatment to provide to inmates in their care).

Second, regarding the actual defendants in this litigation, plaintiff's disagreement with defendants Snider, Peery, and Bannister's grievance responses is not evidence of deliberate indifference. *See Sanchez*, 891 F.2d at 242. Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin*, 662 F.2d at 1344. The record indicates that NNCC's infirmary employs medical staff qualified to provide physical therapy services to inmates who have suffered from a stroke, and the infirmary has the necessary equipment to help a stroke victim recover

sufficiently to care for himself in his normal housing unit (#16-1, Ex. E, ¶¶ 5-11; #16-1, Ex. G, ¶ 5; #16-1, Ex. H, ¶¶ 8-9). Defendants Snider, Peery and Bannister all informed plaintiff that if he wished to be re-admitted to the infirmary for a post-stroke assessment, or if he felt he needed further physical thereapy, he should submit a medical request to see an NNCC doctor (#16-1, Ex. A, pp. 1, 6, 8). The fact that plaintiff failed to request a post-stroke assessment does not evidence deliberate indifference on the part of defendants. On the record before the court, had plaintiff submitted a medical kite requesting further evaluation, he would have had the opportunity to speak with NNCC medical personnel about continuing his physical therapy and would have received the rehabilitation that NNCC physicians felt was appropriate (#16-1, *Declaration of Johnathan Perry*, Ex. E, ¶ 13 ["If D'Amico needed or currently needs further rehabilitation, it is my good faith belief that he would be admitted to the infirmary and infirmary staff would work with him to help him improve."]; #16-1, Ex. G, ¶ 5; #16-1, Ex. H, ¶ 9; #16-1, Ex. I, ¶ 8). Instead, plaintiff chose to file grievances and then ignore the advice given in response.[5]

---

[5] On February 24, 2011, plaintiff filed an informal grievance, which stated he was discharged from NNCC's infirmary without a physical therapy referral, and requested "physical therapy [from] a specialist . . ." (#16-1, Ex. A, pp. 9-10). Defendant Snider responded to the informal grievance, as follows:

> Mr. D'Amico,
> Please let us know if you need to be readmitted for post-stroke assessment and care by our nursing team who has extensive rehab experience. The Department of Corrections does not employ Physical Therapists. Instead any rehab is conducted by our nursing staff, with instructions from PT when coming from the hospital, for instance. Simply show for sick call and ask to be seen on this basis for reassessment. Your request for physical therapists otherwise is denied.

*Id.* at 8.

On April 29, 2011, plaintiff filed a first level grievance, which stated he disagreed with the informal response, as NNCC's infirmary "is required to provide physical therapist[s] for conditions such as mine." *Id.* at 7. Defendant Peery responded to the first level grievance, as follows:

> Mr. D'Amico,
> We are not required to have physical therapists, respiratory therapists, occupational therapists and the like. We are required to have doctors and nurses in sufficient number to handle our scope of practice, which we certainly have, and this was explained to you in your informal level grievance already. [You] were instructed to make known your needs to us and we would decide what to do for you. Your specific request for more physical therapy, unless this would be a decision by our physicians (very

To the extent that plaintiff argues that defendants were deliberately indifferent to his serious medical needs because they denied him the opportunity to receive physical therapy from a non-NDOC licensed physical therapist, the court finds that plaintiff's argument has no merit. Plaintiff's Carson-Tahoe Hospital discharge papers generally recommend that plaintiff should continue physical therapy, occupational therapy and speech language pathology. However, Dr. Gedney and defendant Peery both state that when an inmate returns from an outside medical facility, NNCC physicians will conduct an independent examination to determine appropriate treatment options for that inmate (#16-1, Ex. F, ¶ 4; #16-1, Ex. H, ¶ 4). NNCC is not bound by recommendations from outside hospitals and plaintiff has produced no evidence that Carson-Tahoe Hospital's medical staff have any authority to overrule the treatment decisions of NNCC's medical staff (#16-1, Ex. H, ¶ 4). Plaintiff's assertion that he was entitled to receive physical therapy from a licensed physical therapist is simply a difference of opinion between plaintiff and defendants. The Eighth Amendment does not require defendants to provide treatment from non-NDOC medical specialists simply because plaintiff believes it to be necessary. *See Franklin*, 662 F.2d at 1344.

Third, the defendants in this litigation are Sandra Snider, a Director of Nursing Services I; John Peery, a Director of Nursing Services II; Robert Bannister, NDOC's Medical Director; and Shannon Moyle, a Casework Specialist. Defendants Snider, Peery and Bannister responded to plaintiff's grievances at the informal, first, and second levels, respectively. These defendants state

---

unlikely) is denied. Again, we'll decide what you need based on how you present to us.

*Id.* at 6.

On July 21, 2011, plaintiff filed a second level grievance, which stated he disagreed with the previous responses. *Id.* at 2. Defendant Bannister responded to the second level grievance, as follows:

Agree with the response provided at the first level. Please kite to be seen by a practitioner if you have medical concerns. The practitioner is best able to determine if you need treatment for a serious medical condition.

*Id.* at 1.

that they had no actual involvement in plaintiff's medical treatment following his stroke (#16-1, Ex. G, ¶¶ 3-4; #16-1, Ex. H, ¶ 10; #16-1, Ex. I, ¶ 5). Instead, these defendants merely responded to plaintiff's grievances by informing plaintiff that if he needed additional physical therapy, he should submit a medical kite (#16-1, Ex. A, pp. 1, 6, 8). Given defendants' belief that plaintiff could receive additional rehabilitation in NNCC's infirmary (should it be necessary), their responses were appropriate. There is no evidence in the record that defendants Snider, Peery or Bannister acted with the subjective state of mind to deprive plaintiff of necessary care, or that they denied, delayed, or intentionally interfered with plaintiff's medical treatment. *See Hutchinson*, 838 F.2d at 394. Accordingly, the court recommends that summary judgment be granted in favor of defendants Snider, Peery and Bannister.

Moreover, although plaintiff alleges that defendant Moyle also responded to his grievances, the record does not support plaintiff's allegation. Defendant Moyle is not a member of NNCC's medical staff, but a caseworker. Defendant Moyle was not involved in plaintiff's medical treatment following his stroke and has no authority over medical care or treatment decisions (#16-1, Ex. J, ¶ 4). "Liability under [42 U.S.C. §] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007). There is no evidence that defendant Moyle was involved in any way in plaintiff's case. Accordingly, the court recommends that summary judgment be granted in favor of defendant Moyle.

Finally, it appears that plaintiff's medical condition improved quickly and significantly within the two months following plaintiff's stroke—evidence that NNCC's medical staff chose a course of treatment which was medically acceptable under the circumstances and was not chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson*, 90 F.3d at 332.

Plaintiff's claim that defendants Snider, Peery, Bannister and Moyle exercised deliberate indifference to plaintiff's serious medical needs is contrary to the evidence before the court. Plaintiff has failed to demonstrate the existence of any genuine issues of material fact; and has failed to produce any evidence to suggest that defendants acted in conscious disregard of a significant risk to plaintiff's health. Accordingly, the court recommends that defendants' motion for summary judgment (#16) be granted.[6]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants are entitled to summary judgment in their favor, as there are no genuine issues of material fact for trial. Therefore, the court recommends that defendants' motion for summary judgment (#16) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and LR Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

---

[6] Because the court recommends that defendants' motion for summary judgment (#16) be granted, the court need not reach the issue of qualified immunity.

## IV.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#16) be **GRANTED**.

**DATED:** January 29, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**